**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
DENNIS WRIGHT,                    )
                                  )
               Plaintiff,         )
                                  )
          v.                      )    1:09CV0003
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security,                         )
                                  )
               Defendant.         )
```

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff, Dennis Wright, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment and the administrative record has been certified to the Court.

<u>**PROCEDURAL HISTORY**</u>

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 21, 2003, alleging a disability onset date of July 19, 1999. (Tr. 111-13, 497-500.)[1] Plaintiff later amended his onset date to August 1, 2003. (Tr. 14.) After his application was denied both initially

---

[1] Transcript citations refer to the administrative record.

and upon reconsideration (Tr. 36-39, 41-43), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 44). Present at the hearing, held on May 11, 2006, were Plaintiff, his attorney, and a vocational expert ("VE"). (Tr. 14.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. 14-23) and, on November 6, 2008, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 6-8.)

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2000.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2003, the amended onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: post traumatic stress disorder, polysubstance dependence, bilateral knee pain and back pain (20 CFR 404.1520(c) and 416.920(c)).
>
>      . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
>      . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual

functional capacity to engage in light work with
additional restrictions.

(Tr. 16-17.)

The ALJ described those additional restrictions as follows:

> [Plaintiff] is capable of engaging in light work activity
> with a sit/stand option, lifting and carrying up to 30
> pounds occasionally and 25 pounds frequently, sitting up
> to six hours in an eight hour work day and standing and
> walking up to six hours in an eight hour work day,
> pushing and pulling, and engaging in postural activities.

(Tr. 18.) Due to Plaintiff's post traumatic stress disorder, the
ALJ also restricted Plaintiff to "simple, routine repetitive tasks
in a low stress environment, with minimal interaction demands."
(Tr. 19.)

In light of the above findings regarding residual functional
capacity ("RFC"), the ALJ determined that Plaintiff was unable to
perform his past relevant work. (Tr. 21.) The ALJ also found that
transferability of job skills was not an issue in the case, but
added that Plaintiff has at least a high school education and can
communicate in English. (Id.) Finally, because Plaintiff was 48
years old at the time of the ALJ's decision, the ALJ noted that
Plaintiff was regulatorily defined as "a younger individual age 45-
49." (See id. (citing 20 C.F.R. §§ 404.1563 and 416.963).) Based
on these factors, Plaintiff's RFC, and the VE's testimony, the ALJ
concluded that "there are jobs that exist in significant numbers in
the national economy that the claimant can perform." (Id. (citing
20 C.F.R. §§ 404.1560(c) and 404.1566).) Accordingly, the ALJ

-3-

decided that Plaintiff was not under a "disability," as defined in the Act, from his alleged onset date through the date of the decision. (Tr. 22.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

-4-

case before a jury, then there is substantial evidence." <u>Hunter</u>,
993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at
176 (internal brackets and quotation marks omitted). "Where
conflicting evidence allows reasonable minds to differ as to
whether a claimant is disabled, the responsibility for that
decision falls on the [Social Security Commissioner] (or the ALJ)."
<u>Id.</u> at 179 (internal quotation marks omitted). "The issue before
[the reviewing court], therefore, is not whether [the claimant] is
disabled, but whether the ALJ's finding that [the claimant] is not
disabled is supported by substantial evidence and was reached based
upon a correct application of the relevant law." <u>Craig v. Chater</u>,
76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must take note
that "[a] claimant for disability benefits bears the burden of
proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir.
1981), and that, in this context, "disability" means the
"'inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12

-5-

months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Social Security Admin., 174 F.3d 473, 475 n.2 (1999).[3] A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

-6-

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

-7-

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## Assignments of Error

In the present case, the ALJ found that Plaintiff, who was not working, met his burden at step one of the sequential evaluation process ("SEP"). At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: post traumatic stress disorder, polysubstance dependence, bilateral knee pain, and back pain. The ALJ concluded at the third and fourth steps that these impairments did not meet a disability listing, but that they did foreclose Plaintiff's return to his prior work. At step five, the ALJ found, based on Plaintiff's RFC and the VE's testimony, that Plaintiff could perform other jobs available in the community and thus was not disabled.

Plaintiff argues that substantial evidence fails to support the ALJ's RFC formulation. Specifically, Plaintiff contends that

_____

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See</u>, <u>e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

-8-

the ALJ failed to give proper weight and consideration to (1) Plaintiff's 2004 Magnetic Resonance Imaging ("MRI") scan, (2) the social limitations propounded by Dr. John Lindgren, and (3) the psychological evaluation of Louise Glogau, M.A. (Docket Entry 14 at 6-11.) Finally, Plaintiff claims that the ALJ failed to include all of Plaintiff's "significant[,] non-exertional impairments" in both the RFC assessment and the hypothetical question posed to the VE. (Id. at 11-17.) Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled. (Docket Entry 16 at 19.)

## 1. Plaintiff's 2004 MRI

Plaintiff first claims that the ALJ failed to properly assess a 2004 MRI of his knee when formulating his RFC. He argues that

> [t]he ALJ denied [Plaintiff's disability] claim partly because, in his opinion, Wright's x-ray of May 2005 undermined or contradicted Wright's earlier favorable MRI, which showed "probably medial meniscus undersurface tear at the junction of the body/posterior horn," with "extensive degenerative changes within the groove of the trochlia." The ALJ's conclusion that the x-ray reliably undermined or contradicted the MRI was not supported by medical opinion, however. Further, the ALJ did not explain why he found the x-ray to be more credible than the MRI. Accordingly, the Decision should be reversed.

(Docket Entry 14 at 6.)

Defendant counters that "Plaintiff's premise is flawed, artificially pitting the August 2004 MRI against the May 2005 x-ray in an either/or death match." (Docket Entry 16 at 3.) According to Defendant, "[n]o physician has branded them incompatible, and

-9-

they are not necessarily contradictory." (Id.) Instead, Defendant contends, the ALJ's RFC formulation resulted from a review of the evidence as a whole, including both the MRI and the x-ray as well as physician's reports, other treatment records, and Plaintiff's own testimony. (Id.) More importantly, "[t]he MRI does not establish that whatever functional limitations Plaintiff suffers are incompatible with his RFC, which contemplated severe impairment." (Id. at 3-4.) Defendant's position has merit.

The ALJ's decision discusses the medical evidence of Plaintiff's knee condition at length, including the results of his MRI. (Tr. 17-18.) At no point in this discussion did the ALJ discredit the MRI findings. (See id.) Plaintiff argues, however, that the ALJ impliedly did so in finding that, based on Plaintiff's x-rays and treatment notes, he suffered from "only minimal arthritis." (Docket Entry 14 at 14 (citing Tr. 18).) Because the ALJ also concluded that, "[w]ithout significant findings on x-ray and numerous treatment notes, a more restrictive [RFC] cannot be assigned to the claimant" (Tr. 18-19), Plaintiff claims that "the connection between 'only minimal arthritis' and non-disability was immediate." (Docket Entry 14 at 14.)

This argument greatly oversimplifies the ALJ's decision-making process. Even Plaintiff's own record citations show that the ALJ relied on more than x-rays in making his disability determination. Significantly, the treatment notes cited as a major basis for the

-10-

ALJ's decision demonstrate that (1) Plaintiff's knee pain was well-managed by ibuprofen, a comparatively mild pain reliever (see Tr. 18, 20), (2) Plaintiff's routine daily activities were not substantially restricted by his knee condition (Tr. 20), and (3) despite the "extensive degenerative changes" shown in the MRI, the condition of Plaintiff's knees, in a functional sense, remained stable over time (Tr. 17-18). In short, substantial evidence supports the ALJ's physical RFC formulation.

## 2. Social Limitations

Plaintiff next argues that "[t]he ALJ erred in failing to discuss the opinion of Dr. Lindgren, who assessed [Plaintiff] as being 'severely compromised in his ability to sustain social relationships' and 'severely compromised in his ability to sustain work relationships.'" (Docket Entry 14 at 8.) This claim fails on two fronts.

First, contrary to Plaintiff's assertions, the ALJ's alleged failure to discuss the mental limitations set forth by Dr. Lindgren does not necessitate a finding of error. Simply stated, there is no requirement that an ALJ discuss each piece of evidence in his decision. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Moreover, a closer reading of the ALJ's decision reveals that he did, in fact, consider the limitations set forth by Dr. Lindgren. The ALJ explicitly cited Dr. Lindgren's report, although

by exhibit number rather than by name, and adopted a list of Plaintiff's post-traumatic stress disorder ("PTSD") symptoms almost verbatim from it. (Tr. 19.) More importantly, the ALJ accepted Dr. Lindgren's finding regarding Plaintiff's social limitations by noting that Plaintiff suffers from "marked difficulties in maintaining social functioning" (Tr. 17)[6] which restrict him to jobs "with minimal interaction demands" (Tr. 19).

Despite these findings, Plaintiff argues that the ALJ erred by failing to specifically "address Dr. Lindgren's opinion that [Plaintiff] is *so* limited that he is *disabled*." (Docket Entry 19 at 6.) In fact, the ALJ was in no way obligated to accept Dr. Lindgren's opinion on the ultimate issue of disability. The issue of whether a claimant meets the statutory definition of disability is reserved for the Commissioner and, as Defendant correctly notes, "[a]n opinion rendered by a medical source on this issue is not entitled to 'any special significance.'" (Docket Entry 16 at 5 (quoting 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3)).) However, Plaintiff contends that, although the ALJ did not have to accept Dr. Lindgren's opinion on the ultimate legal issue, the ALJ

---

[6] A marked limitation is defined as "a serious limitation with substantial loss in the ability to effectively function, resulting in unsatisfactory work performance." Johnson v. Astrue, No. 2:10CV00022, 2011 WL 902437, at *4 n.8 (W.D. Va. Mar. 15, 2011) (unpublished). It represents the most limited classification on a mental RFC assessment (see, e.g., Tr. 227), and therefore most closely approximates the "severe" limitations assessed by Dr. Lindgren.

nonetheless had to "evaluate [Dr. Lindgren's] legal conclusions in light of the evidentiary record." (Docket Entry 19 at 7.)

Plaintiff's argument in this regard does not warrant reversal. As the ALJ's decision notes, more than severe social limitations are required to meet or equal the listing for PTSD. Anxiety disorders, such as PTSD, are only considered disabling under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.06 ("Listing 12.06") if a plaintiff meets two sets of criteria. First, he must manifest certain "A" criteria, which consist of specific symptoms set out in the statute. Second, the symptoms set out in part "A" of the listing must result in at least two of the following "B" criteria:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.06(B).

In the present case, the ALJ acknowledged that Plaintiff demonstrates the relevant symptoms of PTSD, which consist of "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." (Tr. 17); see also 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.06(A)(5). The ALJ then found, in line with Dr. Lindgren's evaluation, that Plaintiff suffered marked difficulties in maintaining social functioning. (Tr. 17.) However, because Plaintiff suffered less than marked

-13-

restrictions in the other three relevant areas, the ALJ ultimately determined that Plaintiff failed to meet the "B" criteria for Listing 12.06. (Id.)

Plaintiff points to no medical evidence from Dr. Lindgren or other physicians countering this conclusion and the record reveals none. In fact, the State Agency expert, Dr. Brian Grover, found that Plaintiff was no more than moderately limited in any area, including social functioning. (Tr. 227-30.) Because the ALJ properly incorporated Dr. Lindgren's opinion into the RFC formulation, the ALJ was not obligated to adopt Dr. Lindgren's conclusions as to the ultimate question of disability, and the record does not establish that Plaintiff's PTSD constituted a disabling impairment, Plaintiff's instant arguments provide no basis for this Court to reverse the ALJ's finding at step three of the SEP or the ALJ's formulation of the RFC.

**3. Louise Glogau's Opinion**

Plaintiff next contends that "[t]he ALJ erred in disregarding the opinion of a licensed psychological associate who assessed [Plaintiff] as . . . being disabled." (Docket Entry 14 at 10.) Defendant counters that the psychological associate in question, Louise Glogau, "was not an acceptable medical source," as defined by the Act. (Docket Entry 16 at 7.) Defendant further argues that the ALJ also properly reduced the weight afforded to Ms. Glogau's

-14-

opinions because they "were conclusory and did not set forth 'clinical symptoms.'" (<u>Id.</u>)

Under 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2), acceptable medical sources, defined as "[s]ources who can provide evidence to establish an impairment," are limited to "[l]icensed or certified psychologists" along with licensed physicians and certain narrowly-defined specialists. Although ALJs often consider evidence from "other sources" as well in making disability determinations, such sources merit a lower degree of deference. Specifically, as Defendant explains:

> [a]n ALJ "<u>may</u> . . . use evidence from other sources to show the severity of [a claimant's] impairment and how it affects [the claimant's] ability to work." [20 C.F.R.] 404.1513(d), 416.913(d) (emphasis added). In contrast to the mandate that the Commissioner "<u>will</u>" consider the assessments of acceptable medical sources, the language involving "other sources" is permissive. <u>Compare</u> <u>id.</u> §§ 404.1513(d), 416.913(c) <u>with</u> <u>id.</u> §§ 404.1513(d), 416.913(d).

(Docket Entry 16 at 7-8.)

In the present case, the ALJ admittedly gave less weight to Ms. Glogau's opinion because "it was not conducted by a psychologist and it contain[ed] conclusions and not clinical symptoms." (Tr. 19.) The remaining questions are (1) whether the ALJ misclassified Ms. Glogau as an "other source," and (2) even if the ALJ erred in this classification, whether the diminished weight given to Ms. Glogau's opinion constitutes reversible error.

-15-

Significantly, the issue of whether a licensed psychological associate qualifies as an "acceptable medical source" remains far less settled than either party allows. The sole case to directly address the issue sides with Plaintiff. See Helvey v. Astrue, No. 07-26-GWU, 2008 WL 162138, at *5 (E.D. Ky. Jan. 16, 2008) (unpublished). However, this Court could just as easily conclude, given their comparable training and education levels, that licensed psychological associates are more akin to "other sources" such as "nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists" than to physicians and psychologists. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

Fortunately, the Court need not resolve this issue to decide the matter at hand. First, although Ms. Glogau's "assessment [was] not given great weight" (Tr. 19), nothing indicates that the ALJ gave it no weight. The ALJ transparently considered Ms. Glogau's opinion on Plaintiff's mental impairment, at least to some extent, when formulating his decision. Moreover, the record fails to indicate that the ALJ erred in reducing the weight given to Ms. Glogau's assessment. The Fourth Circuit has held that, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be

-16-

accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590 (citing 20 C.F.R. § 416.927).[7]

In the present case, even a cursory reading of Ms. Glogau's report reveals that the listed "symptoms" are, in fact, Plaintiff's self-reported symptoms rather than clinically-identified symptoms. (<u>See</u> Tr. 418-19.) The assessment includes no test results or any other objective, clinical evidence of Plaintiff's abilities. (<u>Id.</u>) Because the report "contain[ed] conclusions and not clinical symptoms," the ALJ properly accorded it little weight in his RFC formulation. (Tr. 19.) In addition, as was the case with Dr. Lindgren's assessment, the ALJ was in no way obligated to accept Ms. Glogau's opinion on the ultimate issue of disability. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Once again, Plaintiff has failed to show that the mental RFC determined by the ALJ fails for lack of substantial evidence or other reversible legal error.

## 4. Non-exertional impairments

Finally, Plaintiff asserts four separate arguments regarding his RFC and a related hypothetical question. In each of these arguments, he contends that the ALJ failed to include various non-exertional impairments. Specifically, Plaintiff claims that the ALJ improperly omitted from the RFC (1) the frequency of Plaintiff's need to alternate between sitting and standing, (2) a

---

[7] Notably, <u>Craig</u> supports this proposition even in the case of treating physician's testimony, which generally receives controlling weight under 20 C.F.R. §§ 404.1527(d) and 416.927(d).

precise description of Plaintiff's significant mental impairments, and (3) the full extent and duration of Plaintiff's pain. (Docket Entry 14 at 11-16.) He also argues that substantial evidence fails to support the lifting capacity found in his RFC. (Id. at 16-17.)

Plaintiff first asserts that, under SSR 96-9p, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." (Docket Entry 14 at 11.) Because the RFC in the present case failed to do so, Plaintiff contends that both the RFC and the hypothetical question based upon it are "fatally deficient." (Id. at 12.) As Defendant points out, however, SSR 96-9p "provides guidance for situations in which an individual's RFC permits 'less than a full range of sedentary work.'" (Id. at 10 (citing SSR 96-9p, 1996 WL 374185, at *1 (July 2, 1996)).) Where, as here, an individual can perform light, rather than sedentary, work, SSR 96-9p is inapposite. See, e.g., Hodge v. Barnhart, 76 Fed. Appx. 797, 800 (9th Cir. 2003) ("Ruling 96-9p does not apply to light work."); Vallejo v. Astrue, No. 3:10cv445, 2011 WL 4595259, at *8-10 (W.D.N.C. Aug. 4, 2011) (unpublished) (adopting position that SSR 96-9p does not apply where ALJ found claimant capable of light – rather than just sedentary – work and citing similar holdings in Smith v. Astrue, No. 5:09CV1581 RS/EMT, 2010 WL 3749209, at *19 & n.26 (N.D. Fla. Aug. 25, 2010) (unpublished), recommendation adopted, 2010 WL 3749193 (N.D. Fla. Sept. 17, 2010) (unpublished), and Taylor v.

-18-

<u>Astrue</u>, No. 3:08-cv-346-J-TEM, 2009 WL 3232135, at *8 (M.D. Fla. Sept. 29, 2009) (unpublished)).

Further, the record reflects that the RFC adopted by the ALJ and related to the VE included a sit/stand option. (Tr. 18 ("[T]he claimant is capable of engaging in light work with a sit/stand option."), 561 (documenting that RFC in hypothetical posed to VE included limitation of "a sit/stand option").) "[T]he Eleventh Circuit [has] found that, in the case of a Plaintiff with an RFC for light work with a sit/stand limitation, 'although the ALJ failed to specify the frequency that the claimant needed to change his sit/stand option, the reasonable implication of the ALJ's description was that the sit/stand option was at the claimant's own volition.'" <u>Vallejo</u>, 2011 WL 4595259, at *10 (quoting <u>Williams v. Barnhart</u>, 140 Fed. Appx. 932, 937 (11th Cir. 2005)) (internal brackets omitted); <u>accord</u> <u>Thompson v. Astrue</u>, Civil Action No. 8:09-01968-JFA-BHH, 2010 WL 3878729, at *7 (D.S.C. June 16, 2010) (unpublished), <u>recommendation adopted</u>, 2010 WL 3880047 (D.S.C. Sept. 28, 2010) (unpublished), <u>aff'd on other grounds</u>, 442 Fed. Appx. 804 (4th Cir. 2011). "Therefore, contrary to Plaintiff's claim, it was not necessary for the ALJ to incorporate additional 'details' about Plaintiff's need for a sit/stand option." <u>Taylor</u>, 2009 WL 3232135, at *8 (internal citations omitted).

Plaintiff next contends that the RFC formulated by the ALJ, and the hypothetical question based upon it, failed to adequately

reflect Plaintiff's moderate difficulties in maintaining
concentration, persistence, and pace, as well as his marked
difficulties in maintaining social and working relationships.
(Docket Entry 14 at 13.) The RFC, as propounded to the VE, limited
Plaintiff to "simple, routine repetitive tasks in a low stress
environment, with minimal interaction demands." (Tr. 22, 561.)
That limitation adequately accounted for the non-exertional
deficiencies cited by Plaintiff.

The Fourth Circuit has held that "[i]n order for a vocational
expert's opinion to be relevant or helpful . . . it must be in
response to proper hypothetical questions which fairly set out all
of [a] claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50
(4th Cir. 1989). Significantly, "[t]here is no obligation . . . to
transfer [detailed psychiatric] findings verbatim to the
hypothetical questions." Yoho v. Commissioner of Soc. Sec., No.
98-1684, 168 F.3d 484, 1998 WL 911719, at *3 (4th Cir. Dec. 31,
1998) (unpublished). So long as a hypothetical adequately
encompasses the effects of a claimant's mental limitations, it
suffices. See id.; Chavis v. Shalala, No. 93-1915, 28 F.3d 1208,
1994 WL 319163, at *2-3 (4th Cir. July 5, 1994) (unpublished); see
also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.
2008) (ruling that ALJ properly characterized claimant's ability as
encompassing "simple tasks" notwithstanding failure to recite
verbatim expert's description of claimant's "restrictions related

to concentration, persistence, or pace"); <u>Cox v. Astrue</u>, 495 F.3d 614, 620 (8th Cir. 2007) (holding that proper hypothetical questions need only capture "the concrete consequences of a claimant's deficiencies").

In the present case, the evidence, including Plaintiff's life activities and multiple psychological reports, supports Plaintiff's contention that he suffers from moderate difficulties in maintaining concentration, persistence, and pace, and marked difficulties in maintaining social and working relationships. The RFC, however, represents more than just a list of limitations. Instead, an RFC must set forth "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545, 416.945. Here, the RFC adequately reflects Plaintiff's limited functional and vocational abilities. Specifically, the limitation to simple, routine, repetitive tasks addresses his difficulties in maintaining concentration, persistence, and pace, and the restriction to "a low stress environment, with minimal interaction demands" encompasses the "concrete consequences" of his struggles to maintain social and working relationships. (<u>See</u> Tr. 19, 229.) Therefore, the RFC (and hypothetical questions based thereon) sufficiently account, in functional terms, for Plaintiff's mental limitations as supported by the substantial evidence in this case.

Next, Plaintiff alleges that both the RFC and hypothetical questions failed to "fully describe and accurately set forth the

extent and duration of [his] pain." (Docket Entry 14 at 14.)
However, as Defendant correctly responds,

> Plaintiff's argument fundamentally and fatally misunderstands the relationship between symptoms, such as pain, and RFC.
>
> Pain is a symptom of an impairment, not a functional limitation. See 20 C.F.R. §§ 404.1529(c)(4), 404.1545(a)(1), 404.1569a, 416.929(c)(4), 416.945(a)(1), 416.969a; accord Hines, 453 F.3d at 562-63. Any symptom may result in functional limitations that circumscribe an individual's ability to perform work. See Craig, 76 F.3d at 585; 20 C.F.R. §§ 404.1529(c)(4), 404.1545(a)(1), 404.1569.1569a, 416.929(c)(4), 416.945(a)(1), 416.969a. Thus, symptoms are relevant only to the extent that they impose limitations that preclude work. See Johnson, 434 F.3d at 658; 20 C.F.R. §§ 404.1529(c)(4), 404.1545(a)(1), 404.1569a, 416.929(c)(4), 416.945(a)(1), 416.969a.

(Docket Entry 16 at 14.)

The question thus becomes whether the ALJ fully considered and adequately incorporated all of the evidence relating to Plaintiff's complaints of pain when he formulated the RFC. The relevant statutory section, 20 C.F.R. § 404.1529(c)(3), categorizes such evidence as follows:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

In this case, Plaintiff's reported daily activities and medications, along with his treatment records, shaped his RFC, as discussed at length in the ALJ's decision. (Tr. 20.) Specifically, the ALJ noted that (1) Plaintiff "does some housework, drives, attends church and goes to the movies" despite his pain, and that (2) none of Plaintiff's treating physicians have restricted his ability to engage in "at least light work as a result of any musculoskeletal impairment." (Id.) Moreover, as mentioned in relation to Plaintiff's MRI contention, Plaintiff

only takes ibuprofen for pain relief. If he were experiencing severe pain or if ibuprofen did not relieve his symptoms, it is reasonable to assume he would report this information to a physician and he would be prescribed appropriate pain medication. The evidence shows [that Plaintiff] has reported that ibuprofen works well in controlling his pain.

(Id.; see also, e.g., Tr. 382).

Conversely, the ALJ found, based on the medical evidence, that Plaintiff's knee pain did require significant limitations in the amount of time he could sit, walk, and stand and the weight of materials he could lift. (Tr. 18.) Plaintiff's RFC, along with the hypothetical questions based upon it, reflects all of his above

-23-

abilities as well as his limitations resulting from pain.  (Tr. 18, 22.)  Thus, substantial evidence supports the ALJ's determination.

In his final sub-argument, Plaintiff contends that substantial evidence fails to support the lifting capacity found in his RFC and the related hypothetical questions.  Specifically, the ALJ posited that Plaintiff was capable of "lifting and carrying up to 30 pounds occasionally and 25 pounds frequently."  (Tr. 18.)  Although the decision attributes these numbers to Plaintiff's "treatment notes" (id.), no one physician's lifting recommendations exactly mirror the 30 and 25 pound recommendations.  Rather, the three relevant medical assessments are as follows:

First, Dr. Hugh Wallace opined that Plaintiff could carry 15 pounds frequently and 30 pounds occasionally based on a one-time physical examination and a review of Plaintiff's records.  (Tr. 210-13.)  In another consultative examination, Dr. Maqsood Ahmed concluded that Plaintiff could lift and carry up to ten pounds frequently and 25 pounds occasionally.  (Tr. 489.)  However, Dr. Andrea Davis, the state agency physician who conducted an RFC assessment of Plaintiff, explained that "[o]bjective evidence [from Dr. Wallace's examination did] not support the limitations outlined."  (Tr. 225.)[8]  Specifically, Dr. Davis noted that, according to Dr. Wallace's own treatment notes, Plaintiff

---

[8] Because Dr. Davis' RFC assessment took place before Dr. Ahmed's examination, Dr. Davis could not evaluate Dr. Ahmed's conclusions.  However, given that Dr. Ahmed's proposed lifting capacities are even more restrictive than those proposed by Dr. Wallace, Dr. Davis' opinion would apply to them as well.

wore braces on both knees and got around well, got on and off [the] table without any difficulty, [h]ad 90 degrees flexion and full extension of [his] knees bilaterally, [and] mild decrease, 80 degrees, in forward flexion of [his] dorsolumbar spine. Lumbar spine x-ray identifies no significant abnormality; however, possibility of mild thoracic scoliosis is not excluded.

(Tr. 225.) Based on this information, along with all the medical information of record, Dr. Davis opined that Plaintiff could lift 25 pounds frequently and 50 pounds occasionally. (Tr. 220.)

The RFC formulated from the three assessments above reflects the ALJ's thorough consideration of all the relevant evidence. Rather than arbitrarily adopting one opinion over the others, the ALJ incorporated the three into a single formulation based on the record as a whole. In particular, he set Plaintiff's maximum occasional lifting capacity at 30 pounds, substantially in line with the limitations of 25 and 30 pounds by Drs. Wallace and Ahmed, and below the limit set by Dr. Davis. Although the frequent lifting capacity of 25 pounds determined by the ALJ represents the highest of the three values proposed by the medical experts, nothing supports Plaintiff's assertion that, in adopting it, the ALJ "[drew] medical conclusions on his own." (Docket Entry 14 at 17.) The ALJ adopted the number directly from Dr. Davis' reasoned RFC assessment. Under these circumstances, the ALJ's decision is supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion for

judgment on the pleadings (Docket Entry 13) seeking a reversal of the Commissioner's decision be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 15) be **GRANTED**, and that this action be dismissed with prejudice.

　　　/s/ L. Patrick Auld　　　
**L. Patrick Auld**
**United States Magistrate Judge**

January 23, 2012